# ADAMS EXPRESS COMPANY *v.* DARDEN.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 226. Argued April 22, 1924.—Decided May 26, 1924.

1. A judgment of the Circuit Court of Appeals in a case involving the liability of a carrier for injury to an interstate shipment under its tariff and shipping agreement and an act of Congress, *held* reviewable by writ of error and not by certiorari. P. 266.
2. The first " Cummins Amendment," (March 4, 1915, c. 176, 38 Stat. 1196,) made the carrier liable for the full actual loss of property shipped, when caused by the carrier, regardless of any agreement or representation of the shipper. *Id.*

So *held* where, without actual fraud, the value declared by the shipping contract on which the charge was based was much less than the actual value, and carried a lower tariff rate, and where the contract was on a form filed as part of the tariff and bore a notice that the true value must be declared.

286 Fed. 61, affirmed; certiorari denied.

ERROR to a judgment of the Circuit Court of Appeals affirming a recovery of damages in the District Court for loss of livestock in transit.

*Mr. William L. Granbery* for plaintiff in error.

*Mr. K. T. McConnico,* with whom *Mr. J. S. Laurent* and *Mr. Jno. A. Pitts* were on the brief, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The first Cummins Amendment (March 4, 1915, c. 176, 38 Stat. 1196, 1197) provides that a common carrier receiving property for transportation in interstate commerce " shall issue a receipt or bill of lading therefor "; shall be liable " for the full actual loss, damage, or injury to such

property [shipped] caused by it "; that " no contract, re-
ceipt, rule, regulation, or other limitation of any char-
acter whatsoever, shall exempt such common carrier
. . . from the liability hereby imposed "; and that
such liability for the full actual loss shall exist " notwith-
standing any limitation of liability or limitation of the
amount of recovery or representation or agreement as to
value in any such receipt or bill of lading, or in any con-
tract, rule, regulation, or in any tariff filed with the Inter-
state Commerce Commission; and any such limitation,
without respect to the manner or form in which it is
sought to be made is hereby declared to be unlawful and
void." The effect of this act is to nullify provisions limit-
ing liability contained in public tariffs and in bills of lad-
ing. *Chicago, Milwaukee & St. Paul Ry. Co.* v. *McCaull-
Dinsmore Co.,* 253 U. S. 97.

While this act of Congress was in force, Darden shipped
six horses by Adams Express from Latonia, Kentucky, to
Windsor, Ontario. Five of the horses were killed in tran-
sit. He brought this action to recover their value against
that company in the federal court for the Middle District
of Tennessee. The jury found that the accident was due
to the carrier's negligence; and rendered a verdict for Dar-
den in the sum of $32,500. Judgment entered thereon was
affirmed by the Circuit Court of Appeals. 286 Fed. 61.
The case was brought here by writ of error under § 241
of the Judicial Code. A petition for a writ of certiorari
was also filed; and consideration of it was postponed. The
case is properly here on writ of error. Compare *Louis-
ville & Nashville R. R. Co.* v. *Rice,* 247 U. S. 201. The
petition for a writ of certiorari is, therefore, denied.

The company contends that a verdict for it should have
been directed, or that the recovery should have been
limited to $500, by reason of the following facts: The
tariff contained a provision requiring that the actual value
of a shipment be declared; and also provided for an addi-

tional charge by way of a graduated percentage, if the value exceeded a stated amount. The tariff rate for shipping a carload of horses valued at $100 each was $165. This rate was named to Darden by the Express Company's agent; that amount was paid; and the company's so-called non-negotiable live-stock contract, prepared by it, recited that the value of the horses was declared by the shipper to be $100 each. The horses were in fact race horses; and were of much greater value than the sum named. This fact was known to the company's agent. The copy of the shipping contract stating $100 to be the declared value of each horse was not seen by Darden until after the accident had occurred. It was not contended that he was guilty of actual fraud in shipping at the rate named.

The main argument for the company appears to be this: The statute requires the shipper to disclose the "real value" of the shipment, and requires the carrier to collect the "real value" rate. Darden paid the rate which, by the tariff, was made applicable only to horses valued at not more than $100 each. The shipping contract recited that the declared value of each horse was $100. To that contract was attached a notice that the shipper "must state the actual value of the shipment, which value must be inserted in the contract." The form of this contract and notice were filed as part of the tariff. Darden was bound to know the provisions of the tariff. To recover he must sue on the shipping contract. By claiming actual value largely in excess of $100, with a view to establishing liability therefor, he attempted not only to vary a written contract, but to secure, by means of a discriminatory rate, an illegal rebate. Thereby, he necessarily disclosed to the courts his unlawful conduct; and the court should refuse its aid, whether the action be deemed one upon an illegal contract or, more generally, a proceeding to enforce rights arising out of an illegal transaction.

The short answer to this, and to the company's other arguments, is furnished by the comprehensive terms of the statute. From them appears the intention of Congress to make the carrier liable for the full actual loss, regardless of any agreement or representation of the shipper. Its purpose is so accurately stated that discussion could not make it clearer. It might confuse. The enactment of the second Cummins Amendment, in the following year (Act of August 6, 1916, c. 301, 39 Stat. 441) indicates merely that the provisions of the 1915 Act proved to be more comprehensive than was found to be desirable.[1] Compare *American Railway Express Co.* v. *Lindenburg,* 260 U. S. 584.

*Affirmed.*
*Certiorari denied.*

MR. JUSTICE SANFORD took no part in the consideration or decision of this case.

---

[1] The 1916 Act excepts from the prohibition of limitation of liability " property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, etc." See *In the Matter of Express Rates, etc.,* 43 I. C. C. 510; *Live Stock Classification,* 47 I. C. C. 335; *J. B. Williams Co.* v. *Hartford & New York Transportation Co.,* 48 I. C. C. 269, 273; *Gold Hunter Mining Co.* v. *Director General,* 63 I. C. C. 234, 241; *Domestic Bill of Lading and Live Stock Contract,* 64 I. C. C. 357, 361; *U. S. Industrial Alcohol Co.* v. *Director General,* 68 I. C. C. 389, 391; *North Packing & Provision Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 69 I. C. C. 235, 237; 80 I. C. C. 737, 739.