**CHINA FIRE INS. CO., Limited, v. DAVIS, Director General of Railroads.**

**No. 380.**

Circuit Court of Appeals, Second Circuit.

June 8, 1931.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and Arthur W. Clement, both of New York City, of counsel), for appellant.

Edward N. Abbey, of New York City (Russell H. Robbins, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The Goodyear Tire & Rubber Company shipped certain parcels of rubber from Singapore to Akron, Ohio, which were received by the Union Pacific Railroad Company at San Francisco for carriage over its line. While in its custody (the road being at the time in the possession of the Director General of Railroads), three hundred and thirty cases were burned under circumstances which made the carrier liable. The plaintiff had issued to the Goodyear Company's assignor certain policies of insurance, which contained no clause exempting the underwriter pro tanto from liability, in case the shipper recovered against the carrier for the loss. On the other hand, the through bill of lading under which the rubber was carried from San Francisco to Akron contained the following clause: "Any carrier or party liable on account of loss or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property so far as this shall not avoid the policies or contracts of insurance."

The shipper, the Goodyear Company, made claim upon the defendant, which it recognized and paid under an agreement that the shipper should "proceed at once to make proof of loss" against the plaintiff, should "take all other necessary steps and attempt in good faith to collect," and should pay to the defendant "the amount collected," less the expense of collection. If the shipper was unable to collect, the defendant was to decide whether itself to sue, or to arrange with the shipper to do so. Having so received the amount agreed, the shipper collected upon the policies from the plaintiff, concealing the fact of the defendant's prior payment. In the negotiations which resulted in this payment, the plaintiff upon receiving the claim, wrote, "If you have not already done so, we would request that you immediately file claim against the carriers"; to which the shipper answered that it had done so. Moreover, at the time of payment the plaintiff took from the shipper a receipt reciting that it was a loan, to be repaid only to the extent that the shipper should recover from the carrier. About a year later the shipper paid to the defendant the same amount (less expenses of collection), as it had received from the plaintiff, but there is nothing to identify the money so paid with that received. For all that appears the shipper may have disbursed the avails of the plaintiff's check, and taken other funds to pay the defendant.

The plaintiff after a long interval, being advised that the shipper had already collected, sued the defendant at law, charging fraud in the suppression of that fact, and the privity of the defendant with the whole transaction. The District Judge directed a verdict for the defendant on the ground that it had not made the shipper its agent to collect the policies, and that the shipper's fraud, if any, was not to be imputed to it. The plaintiff appealed.

While it is true that the policies did not expressly reserve to the plaintiff any rights against the carrier, this was unnecessary; as between the two the carrier was principal, the underwriter, surety. If, however, the provision in the bill of lading was valid, which gave to the carrier the benefit of the shipper's insurance, the loss finally fell upon the underwriter, who could not throw it upon the carrier, even though the shipper might in the first instance recover from him. Phœnix Ins. Co. v. Erie & West. Trans. Co., 117 U. S. 312, 6 S. Ct. 750, 29 L. Ed. 873; Wager v. Providence Ins. Co., 150 U. S. 99, 14 S. Ct. 55, 37 L. Ed. 1013. In that case the defendant must succeed, because, although the plaintiff used a form of receipt, which made the payment a loan to the shipper, there was, as we have said, no provision in the policies, as in Luckenbach v. W. J. McCahan Sugar Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522, by which the underwriter became liable only to the extent that the carrier was not. Moreover, even though the shipper procured payment from the plaintiff by fraud, it was no more than the defendant was entitled to under the bill of lading, for the shipper held the claim against the plaintiff in trust for the defendant, from the moment that the defendant paid. Any claim under the policies thereupon in equity became its own, and it is immaterial whether the plaintiff, the obligor, was fraudulently induced to pay that which was in any case due. Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; Story v. Conger, 36 N. Y. 673, 93 Am. Dec. 546; Randall v. Hazelton, 12 Allen (Mass.) 413; Plews v. Burrage (D. C.) 19 F. (2d) 412.

■ If, however, the clause was invalid as an unlawful discrimination, the plaintiff may succeed upon the common count for money had. In that case the shipper procured by fraud what the plaintiff was not obliged to pay, because it was in that case only surety for the loss, and the principal had already paid. Moreover, it paid only on the understanding that it should have the benefit of the carrier's liability, and that too by the same form of receipt as was used in Luckenbach v. W. J. McCahan Sugar Co., supra, though any other equivalent expression would have served. The Turret Crown, 297 F. 766 (C. C. A. 2). The learned District Judge held that even so, the defendant was not liable for the shipper's fraud, because the shipper was not its agent. We are not clear that the correspondence between the shipper and the defendant did not create an agency, but we find it unnecessary to pass on that question. At least the shipper held the money on a constructive trust.

If it had turned over to the defendant the very money received, the plaintiff's right against the defendant would have been equally clear; it would have traced the actual fund received by the shipper to the defendant, who was not a bona fide holder, having paid nothing for it which by hypothesis it was not bound to. We might perhaps rest the result upon the presumption that the shipper who was an express trustee, had not violated its duties to the defendant while it held the money, and that it turned over the same fund which it had received from the plaintiff. Knatchbull v. Hallett, L. R. 13 Ch. Div. 696. But it is not necessary to resort to that device.

■ No doubt the fund must be traced to the defendant. Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; St. Louis & San Francisco R. R. Co. v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060. However, assuming that in violation of its duty the shipper had disposed of the payment received from the plaintiff, it might make restitution. So it did, and the appropriation out of its own property of an equivalent amount, fixed the character of that sum as the trust fund. Had it, for example, misappropriated the fund, and later set apart an equal amount for the defendant, there can be no question that upon its bankruptcy the defendant could have claimed the account so segregated as its own. Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047; Duel v. Hollins, 241 U. S. 523, 36 S. Ct. 615, 60 L. Ed. 1143; In re McIntyre & Co., 181 F. 960 (C. C. A. 2); Southern Cotton Oil Co. v. Elliotte, 218 F. 567 (C. C. A. 6); Baker v. N. Y. Nat. Exchange Bank, 100 N. Y. 34, 2 N. E. 452, 53 Am. Rep. 150. But the payment was itself as definitive an appropriation as any other, and the defendant, upon receiving it, took it as the substitute for the original collection, impressed with whatever equities that had borne.

■ Thus, the case in any angle depends upon the validity of the clause in the bill of lading, which in turn depends upon whether as a result of it the carrier "indirectly, by any * * * device * * * collect (s), or receive (s) from any person * * * a greater * * * compensation for any service rendered * * * in the transportation of * * * property * * * than

it * * * collects, or receives from any other person * * * for doing for him * * * a like and contemporaneous service * * * under substantially similar circumstances and conditions." - Section 2, title 49, U. S. C. (49 USCA § 2). The clause put it in the power of the shipper at his pleasure to take out policies which might, or might not, contain the now usual clause that the underwriter should be liable only so far as the shipper did not recover from the carrier. Thus the shipper was free in effect to insure the carrier or not, as he chose, and while we are not advised whether this choice involved a difference in premium, it is certainly possible that this may have been the case. In any event such insurance appears to us to be "compensation" within the purport of the section. Certainly it had a present value, quite aside from whether it cost anything to the shipper, a value ascertainable by actuarial calculation. Nor does it matter that it was a favor from the shipper to the carrier, and not vice versa. Chesapeake & Ohio Ry. Co. v. Westinghouse Co., 270 U. S. 260, 46 S. Ct. 220, 70 L. Ed. 576. The statute forbids any discrimination, whichever side profits. It is quite true that the same option was given to all shippers alike, but that is in effect no more than to say that each might so far favor the carrier as his interests dictated. Pro tanto the carrier's "compensation" was left open to the action of the parties in the particular case, which is what the statute forbids. In Duplan Silk Co. v. American & Foreign Marine Ins. Co., 205 F. 724, we held an agreement void as a rebate by which the carrier agreed to insure the shipper, and although section 6 (7), 49 USCA § 6 (7), was there involved, the same reasoning applies here, since a rebate is only one form of discrimination. So far as we can find, nothing else similar has hitherto arisen in the books.

There remains the question whether this is a matter which belongs primarily to the Interstate Commerce Commission, and which courts will not consider until the Commission has acted. It is indeed true that the bill of lading at large was before the Commission in 1908, and received its general approval (14 I. C. C. 346), but reconsideration of any detail was then expressly reserved, and the approval cannot be understood to have finally settled the question now before us. In any event no such action is conclusive, when the question is of conformity with the statute itself (Chicago, etc., Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801), and a fortiori the same is true

when a bill of lading or a tariff has merely been filed (Boston & Maine R. R. v. Piper, 246 U. S. 439, 38 S. Ct. 354, 62 L. Ed. 820, Ann. Cas. 1918E, 469; Union Pac. R. R. v. Burke, 255 U. S. 317, 41 S. Ct. 283, 65 L. Ed. 656; Adams Express Co. v. Darden, 265 U. S. 265, 44 S. Ct. 502, 68 L. Ed. 1010). We have recently discussed a similar question in United States Navigation Co. v. Cunard S. S. Co., 50 F.(2d) 83, where we concluded that under the Shipping Act the Shipping Board had primary jurisdiction over questions arising under the Anti-Trust Laws, and might dispense with them altogether. Moreover, while in that case certain offenses were charged which conflicted with the statute, adequate relief against these was prescribed by recourse to the Board. The question now before us is, not where relief must be sought, but of the lawfulness of a provision in the contract of carriage which violates the statute, in an action where it arises collaterally.

Even so, it may not be for courts in the first instance; that depends upon whether the Commission has jurisdiction to approve such a stipulation; that is, whether there might be circumstances which made it lawful. The line, though capable of clear general statement, is at times difficult of application. The reasonableness of rates (Texas, etc., R. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Keogh v. Chicago & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183), or of a practice (Baltimore & O. R. R. Co. v. U. S., 215 U. S. 481, 30 S. Ct. 164, 54 L. Ed. 292; Robinson v. B. & O. R. R. Co., 222 U. S. 506, 32 S. Ct. 114, 56 L. Ed. 288; Midland Valley Co. v. Barkley, 276 U. S. 482, 48 S. Ct. 342, 72 L. Ed. 664), or the propriety of intrastate rates (Board of Railroad Com'rs of North Dakota v. Great North. Ry. Co., 281 U. S. 412, 50 S. Ct. 391, 74 L. Ed. 936), are within the powers of the Commission; they plainly involve administrative questions which the statute does not profess to control. But where it is necessary only to construe the statute, or indeed even a published tariff (Great North. Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943), we need not await the action of the Commission, which is in that case predetermined (Turner Lumber Co. v. C., M. & St. P. Ry. Co., 271 U. S. 259, 46 S. Ct. 530, 70 L. Ed. 934, Texas, etc., Ry. Co. v. Gulf, etc., Ry. Co., 270 U. S. 266, 46 S. Ct. 263, 70 L. Ed. 578). Nor should the fact that a discrimination is involved put the matter

exclusively in the hands of the Commission, any more than it does in the case of rebates. Pennsylvania R. R. Co. v. International Coal Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446; Mitchell Coal Co. v. Penn. R. R. Co., 230 U. S. 247, 266, 267, 33 S. Ct. 916, 57 L. Ed. 1472. The character of the subject-matter cannot be determinative, if the statute is peremptory. True, we must decide that no evidence could justify the clause here in question; that to leave it open to shippers to insure or not insure the carriers could not be justified by any facts which might be developed at a hearing before the Commission. In asserting such a negative, as we do, we construe the statute in its declared terms. The service was the same in all cases; the choice was not controlled by any facts relevant for purposes of transportation; the "compensation" was granted or withheld at will. In the face of the section such a situation does not appear to us to leave open any problem of transportation, that requires the decision of those peculiarly versed in that subject.

The plaintiff in its assignments of error does not assert the defendant's liability for the expenses of the shipper in collecting. We do not therefore consider the questions so raised. We hold that it was entitled to recover the amount paid to the defendant; and, since the money was unlawfully held ab initio, with interest from the time of its receipt.

Judgment reversed.