## WATSON BROS. TRANSP. CO., Inc. v. FEINBERG KOSHER SAUSAGE CO.

### No. 14412.

United States Court of Appeals
Eighth Circuit.

Dec. 19, 1951.

Floyd E. Nelson, Minneapolis, Minn. (Donald A. Morken, John M. Palmer, and Stinchfield, Mackall, Crounse & Moore, all of Minneapolis, Minn., on the brief), for appellant.

Lester L. Sokol, Minneapolis, Minn. (Robert A. Levitt, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

In this action appellee, plaintiff below, seeks to recover for the loss of perishable meat products shipped over the appellant Watson Bros. Transportation Co., Inc., truck line from Minneapolis, Minnesota, to Los Angeles, California. Watson Bros. is a common carrier by motor vehicle and gives refrigerated through service by

truck from Minneapolis to Los Angeles. The appellee, Feinberg Kosher Sausage Co., is a processor of meat products at Minneapolis. Prior to March, 1949, Feinberg shipped very little of its products to California. That which it had shipped was barreled in brine to prevent spoiling from excessive temperatures, which was uneconomical. Feinberg had no knowledge of any refrigerated service by truck to California. In March, 1949, Watson Bros.' freight solicitor called on Feinberg and solicited its refrigerated freight business to California, informing Mr. Feinberg, appellee's president, that Watson Bros. had recently instituted a direct refrigerated service to California. The solicitor was informed that if Watson Bros. could get Feinberg's products to California refrigerated, in a reasonable length of time, and if Feinberg could get Swift & Company to handle its products in California, refrigerated freight business could probably be given Watson Bros. by Feinberg. Shortly thereafter, Mr. Feinberg informed the solicitor that satisfactory arrangements had been made with Swift & Company in California, and that it would be up to Watson Bros. to see that Feinberg's products were transported properly. On April 1, Feinberg sent Watson Bros. a letter to that effect. Two shipments were delivered by Feinberg to Watson Bros. at Minneapolis, consigned to Swift & Company in California, on April 6 and April 25, 1949. Neither of these shipments was refrigerated and both arrived safely without any spoilage or deterioration. Several shipments were delivered to Watson Bros. by Feinberg, consigned to intermediate points between Colorado and California, prior to May 2, 1949, which were also not refrigerated and which were delivered in good shape. On May 2 and May 6, 1949, the shipments involved in this action were delivered to Watson Bros. at Minneapolis, consigned to Swift & Company at Los Angeles. Both of these shipments were delivered to Watson Bros. in good condition and were spoiled upon arrival at Los Angeles.

Feinberg had printed copies of bills of lading of its own upon which it listed the products constituting the two shipments in question and specifically described the products as salami, bologna, weiners, franks, and similar processed meat products, on the bill of lading. The products were packaged in new fiberboard boxes, prominently marked,—"Perishable. Keep Cool and Dry."

The bills of lading contained the usual standard provisions, including "The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof except as hereinafter provided." The only provision in the bill of lading which appellant claims falls within the exception of the preceding clause is that the carrier shall not be liable for any loss or damage "caused by * * * the act or default of the shipper * * *."

The tariff under which Watson Bros. operated contained the following clause: "Except as otherwise provided in individual items, rates named in tariffs made subject to this tariff include the cost of protecting shipments from damage by heat or cold, providing that the shipper states specifically on the bill of lading that such protection is required."

Watson Bros. was protected by the following tariff provisions:

"Sec. 1. The obligation to accept articles for shipment shall be subject to capacity and appropriate type of vehicles and to requirements of ordinances or laws limiting or regulating the transportation of the property or use of the vehicles.

"Sec. 2. Rates or ratings provided on freight requiring protection from heat or cold do not obligate the carrier to provide refrigeration, heater service or vehicle specially equipped for such protection, except as otherwise provided in carrier's tariffs."

Feinberg had actual knowledge of none of these tariff provisions. The two shipments now involved were not refrigerated between Minneapolis and Denver. The evidence justifies the conclusion that they were not refrigerated from Denver to Los Angeles. When they arrived at Watson Bros.' dock in Los Angeles they were packed in dry ice and delivered to Swift & Company in that refrigerated condition.

The packages were not opened at the time of delivery and were immediately placed in a cooler by Swift & Company, apparently in good condition. When opened and inspected, the shipments were found to be spoiled. Feinberg did not note on the bills of lading that refrigeration was required but appears to have depended entirely upon his understanding with Watson Bros.' solicitor that refrigeration would be provided.

The rate charged for these shipments was the rate referred to in the above quoted clause of the tariff, which included the cost of refrigeration. There was no other rate in effect under the tariff, and no provision was made for any reduction in rate when refrigeration was not furnished.

Watson Bros. defended upon the grounds (1) "That the defendant (carrier) did not have a duty to refrigerate these shipments in the absence of a specific request by plaintiff (shipper) on the bill of lading"; (2) "That defendant in fact used the degree of due care required by its contract or at common law in the transportation of these shipments"; and (3) "The plaintiff has not sustained its burden of proof by substantial evidence that the products were spoiled at the time of delivery to the consignee."

The trial court found that the shipments were spoiled as a result of lack of refrigeration in transit prior to reaching Swift & Company; that Watson Bros. did not exercise reasonable and ordinary care, under the circumstances, in protecting the shipments, and, holding that the tariff provision providing for the request for refrigeration on the bill of lading did not limit the carrier's common law responsibility to exercise due care for the protection of the shipments, entered judgment for the plaintiff for the value of the products lost. The case was tried without a jury.

■ Since an examination of the record discloses that the evidence amply supports the trial court's finding that both shipments were spoiled as a result of lack of refrigeration in transit, and that the carrier did not exercise reasonable and ordinary care in protecting the shipments from spoilage, we pass immediately to the main question involved on this appeal, to wit, whether the tariff provision above referred to relieved the carrier of the responsibility of exercising ordinary care to furnish refrigeration in the absence of a request therefor noted on the bill of lading.

■ The trial court in its memorandum opinion, D.C., 101 F.Supp. 403, analyzed this tariff provision and concluded that the language of that clause of the tariff does not state, as defendant contends, that protection would be given to shipments only if the shipper requested protection. Fortifying that conclusion, the trial court noted, as the evidence indicated, that the carrier had not so construed the tariff in practice because it had exercised its judgment as to the need for refrigeration and had given that protection under the tariff, even when the shipper had not requested it. Another reason stated by the trial judge for the construction given this tariff provision is that the subject of this clause of the tariff actually concerns the amount of the rate to be charged and not what must be done by the shipper in order to obtain protection of perishable goods shipped thereunder, and that to sustain the carrier's contention that the shipper is required by this clause of the tariff to indicate if refrigeration or other protection is desired, and that the carrier would be relieved of liability if such request was not made, would ignore the literal words and the subject of the tariff and disregard the carrier's common law duty which is preserved by the bill of lading.

We are convinced that the trial court's construction of the tariff provision was not untenable and that the judgment should be affirmed on that ground. An analysis of that clause of the tariff will demonstrate that conclusion.

There was no provision for a different rate for the individual items included in the bills of lading, hence the first phrase of the quoted clause of the tariff, reading "Except as otherwise provided in individual items," may be eliminated from the clause, and the remainder of that clause may for present purposes be simplified as follows: "[The] rates * * * [charged] include the cost of protecting shipments from damage by heat or cold, providing that the shipper

states specifically on the bill of lading that such protection is required."

It is not an unreasonable construction of this language to say, as the trial court in effect held, that this clause meant that the rate which would be applied would be the rate which included the cost of refrigeration—if the shipper stated specifically on the bill of lading that such protection was required. And, since the rate which included the cost of refrigeration was applied without specific direction on the bill of lading, the purpose of the proviso was accomplished without that action by the shipper.

But if, as appellant contends, the tariff provision means that the carrier need not exercise reasonable care to protect the shipments unless the shipper specifically asks for that protection, there is another reason why this tariff provision cannot limit the carrier's common law duty to exercise reasonable care for the protection of the perishable products while in transit.

The above quoted provision of the bill of lading providing that the carrier should be liable as at common law except for loss or damage caused by the act or default of the shipper fixes the liability of the carrier at the responsibility imposed by common law. That responsibility is, in handling perishables, to exercise reasonable care. The Carmack Amendment of the Interstate Commerce Act did not change but reiterated that responsibility and must be read into all interstate shipping contracts. Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Rankin, 241 U.S. 319, 36 S.Ct. 555, 60 L.Ed. 1022. And since there was only one rate to be applied under the tariff and that rate was applied, this is not a case where there was a choice of alternate rates under which the shipper might choose between a higher rate without any limitation of liability and a lower rate with a contractual limitation of a nature permitted by the Transportation Act. See Geo. N. Pierce Co. v. Wells, Fargo & Co., 236 U.S. 278, 35 S.Ct. 351, 59 L. Ed. 576. Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Rankin, supra; The Ansaldo San Georgio I v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016.

Section 20, Subdivision (11) of the Interstate Commerce Act, 49 U.S.C.A. § 20, Subd. (11), prohibits the exemption of the carrier from liability for any loss or injury to shipments caused by the carrier, notwithstanding any limitation thereof in any receipt or bill of lading or in any contract, rule, regulation, or in any tariff filed with the I.C.C. And the Act of Congress specifically provides that any such limitation is unlawful and void.[1] To hold that a carrier may charge the rate to be applied for refrigerated transportation service under a contract requiring reasonable care for the protection of perishable goods and then relieve itself of that responsibility by a provision inserted in the tariff that it would not be responsible for exercising reasonable care unless the shipper specifically requested it on the bill of lading would effectively relieve the carrier of the responsibility imposed upon it by the Interstate Commerce Act and nullify the pertinent provisions thereof. Hence, if the clause of the tariff in question means what appellant contends it means, the proviso is void. Adams Express Co. v. Darden, 265 U.S. 265, 44 S.Ct. 502, 68 L.Ed. 1010; Union Pac. R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 285, 65 L.Ed. 656. See also in prin-

1. 49 U.S.C.A. § 20, Subd. 11:
"Any common carrier * * * subject to the provisions of this chapter * * * shall be liable to the lawful holder [of the bill of lading] for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; * * * and any such common carrier * * * shall be liable * * * to any party entitled to recover thereon * * * notwithstanding any limitation of liability * * * in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission * * * and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * * Provided further, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law * * *."

ciple Chicago, M. & St. P. Ry. Co. v. Mc-Caull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801.

We do not mean to say that any common carrier must give refrigerated service whenever called upon by a notation on a bill of lading to do so. The appellant was protected against being required to accept shipments of that nature unless it had the facilities to properly give the service. It did have those facilities and held itself out to the public as having them and that it would use them when reasonable care required. It charged the rate which included the cost of giving the service, and it was obligated under the law and its contract to give that service when reasonable care required it.

The appellant argues that a requirement that the shipper note on the bill of lading itself any necessity for refrigeration or protection from cold weather is appropriate and reasonable in order to make it possible for the carrier to select from the great number of shipments tendered it those which actually need refrigeration. But that argument goes to the question of the reasonableness of such a requirement and whether the carrier in a given instance exercised reasonable care in determining whether a particular shipment needed refrigeration. If the boxes containing the products involved in the two shipments in question had not been prominently identified as perishables and needing refrigeration, and if the bills of lading themselves had not described the nature of the products constituting the shipments, in the absence of other facts imparting notice of the perishable nature of the shipments, appellant might have successfully argued to the trier of the facts that it did not fail to exercise ordinary care in not discovering that the shipments needed refrigeration. But the question now presented for determination is the proper construction and validity of the tariff provision, both questions of law for the courts without preliminary action by the I.C.C. Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Chicago M. & St. P. Ry. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801.

Appellant contends that the failure of the shipper to request refrigeration constituted a notice or instruction to the carrier that no such service was needed. But that argument is inconsistent with the intent of the tariff as the trial court correctly construed it, assumes the validity of the tariff as construed by appellant, and is directly contradicted by the agreement between the shipper and appellant's freight solicitor that refrigeration would be furnished.

The provision that the shipper note on the bill of lading when refrigeration was required, not making such act a condition precedent to the carrier's obligation to exercise reasonable care in protecting the shipments, or, if it be construed as a condition precedent to the exercise of reasonable care, being invalid for the purpose of limiting appellant's common law duty to exercise that degree of care, and the evidence fully supporting the trial court's finding that appellant's failure to discharge its duty to exercise reasonable care caused the loss, the judgment of the trial court was correct and should be and is affirmed.