Burke, J.
The plaintiff in the action below, Salon Service, Inc., delivered 12 cartons of wigs in New York City for shipment by the defendant freight forwarders to Niles, Illinois. The wigs were somehow lost and plaintiff thereafter filed a proof of loss with its insurer and executed a loan receipt to its insurer for the full amount of its loss. The insurance policy contained a paragraph which provided that “ This insurance shall not inure directly or indirectly to the benefit of the carrier or other bailee, by stipulation in bill of lading or otherwise.” The plaintiff brought an action against the defendants to recover the full value of the lost wigs. The defendants’ answer alleged as an affirmative defense and counterclaim that the bill of lading under which the wigs were shipped contained a provision giving the defendants the benefit of any insurance effected by the plaintiff on the property shipped and that the plaintiff had.effected such insurance and had been fully compensated for its loss by its insurer. Section 2 (par. [c]) of the bill of lading issued in this case read as follows: ‘ ‘ Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies *19 or contracts of insurance. Provided, that the carrier reimburse the claimant for the premium paid thereon.” The obvious conflict between the provision as to insurance in the policy of insurance and the provision in the bill of lading was resolved by Special Term in favor of the defendants, plaintiff’s motion to dismiss the defense and the counterclaim being denied, but the Appellate Division, First Department, in an opinion by Justice Steuer, reversed on the law and granted the motion upon the ground that, whatever the rationale used to deny effect to the provision in the bill of lading, the key reason for that result was that it provides a standard upon which the commercial community could regulate its conduct. The appeal to this court resulted from the certification by the Appellate Division of a question as to the propriety of its order which reversed the order of Special Term.
The battle of conflicting clauses devised by insurers and carriers has had a long history (see, e.g., Note, 37 Harv. L. Rev. 901) with the carrier at first gaining the upper hand (see Phoenix Ins. Co. v. Erie Transp. Co., 117 U. S. 312 [1886]) only to lose it to the counterdraftmanship of the insurer (see Brew & Co. v. Auclair Transp., 106 N. H. 370 [1965]; 10 Williston, Contracts [3d ed.], § 1118). The State court cases upholding the effect of the insurance clause in the face of the conflicting clause in the bill of lading have done so in terms of various theories, but where, as here, the defendants are concededly engaged in interstate commerce, the few Federal cases dealing with the conflict have based their holdings on the provisions of the Interstate Commerce Act. In the first and leading case in the area (China Fire Ins. Co. v. Davis, 50 F. 2d 389, cert. den. sub nom. Mellon v. China Fire Ins. Co., 284 U. S. 658), Judge Learned Hand considered the effect of the “benefit of insurance ” clause in the carrier’s bill of lading and concluded that it was invalid when used in interstate commerce because it constituted a violation of section 2 of the Interstate Commerce Act (U. S. Code, tit. 49, § 2) in that the carrier thereby, at least indirectly, received greater compensation from a shipper who had effected insurance on his shipment than it did from a shipper who had not done so and, therefore, the carrier was engaged in a prohibited discrimination (50 F. 2d 391-392). In 1949, this holding was followed in National Garment Co. v. New York C. & St. L. R. Co. *20 (173 F. 2d 32) and its rationale restated as follows (p. 38): ‘ ‘ Insurance for the benefit of a carrier is of value to the carrier from the beginning of the transportation and, - in the event of transportation without loss, which we assume is the usual case, the carrier has received the compensation forbidden by the Interstate Commerce Act at the expense of the shipper. In the event of loss the carrier, if it so elects, returns to the shipper the cost of the compensation which it was forbidden by the Act to receive in the first place, avoids its liability as a carrier, and deprives the insurer of its rights under a valid contract.” The only other relevant Federal case is The J. L. Luckenbach (65 F. 2d 570, 575) which merely cited the Chima case with approval and no Federal case departing from the rationale of the latter case has been found. This state of the Federal law on the issue is decisive since this in an area in which Congress has legislated on a matter over which it has exclusive authority and this case, involving as it does a transaction in interstate commerce, must be decided on the basis of Federal law (National Garment Co., supra, p. 35; see, also, Farmers Elevator Mut. Ins. Co.v.Jewett, 394 F. 2d 896). Accordingly, since the only Federal cases which have decided the issue have held the bill of lading clause invalid as in violation of the Interstate Commerce Act, it is clear that the defendants here cannot avail themselves of the clause as a defense or as the basis of a counterclaim in this action since such use would permit them to benefit by a violation of that Act.
The defendants make one further argument to avoid the dismissal of their defense and counterclaim and that is that, as freight forwarders covered by Part IV of the Interstate Commerce Act (U. S. Code, tit. 49, § 1001 et seq.), they are not to be bound by decisions interpreting the validity of the benefit of insurance clause in terms of section 2 of the Act which is contained in Part I, applicable to railroads. This argument, however, overlooks the fact that Parts II, III, and IV of the Act were' each added to deal separately with the functional segments of the interstate transportation industry and yet form an integrated and harmonious scheme for the regulation of the entire industry. Thus, subdivision (b) of section 1004 of the Act, contained in Part IV and specifically applicable to freight forwarders such as the defendants, parallels section 2 *21 in its prohibition of discrimination in providing services in interstate commerce. The rationale of the cited cases dealing with the effect of section 2 on bills of lading used by carriers is, therefore, similarly applicable to the parallel provisions of subdivision (b) of section 1004 and defendants’ argument in this regard merely presents a distinction without a difference. Therefore, the defense was properly dismissed as being without merit (and the counterclaim based on the same clause in the bill of lading is equally unavailing).
The order of the Appellate Division is affirmed and the certified question is answered in the affirmative.
Chief Judge Fttld and Judges Scileppi, Bergan, Keating, Beeitel and Jasen concur.
Order affirmed, etc.