# THE

# New York Supplement

## VOLUME 119

---

### BRENSTEIN v. NORTH AMERICAN REALTY CO.

(Supreme Court, Special Term, New York County. November 3, 1909.)

EVIDENCE (§ 313*)—WEIGHT AND SUFFICIENCY—DECLARATION OF ANCIENT VENDOR.

    The declaration of a vendor as to the boundary of his land along a river, made when the marsh or meadow lands and the actual high-water mark of the river were well-known landmarks, is of more weight than the speculations concerning the actual location of the high-water mark, evolved more than a century later from the general references in the ancient charter to marshes, meadows, and pastures along such river.

    [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 313.*]

Action by Max Brenstein against the North American Realty Company for specific performance of a contract for the sale of real property, or, in the alternative, for the recovery of the deposit and counsel fees. Judgment for defendant.

Isidore Herschfield (Max L. Shellek, of counsel), for plaintiff.
Edward S. Clinch, for defendant.

GIEGERICH, J. The plaintiff's case rests upon the proposition that Aaron Bussing died seised of a tract of land which included the premises in question, and that although the executor of his will conveyed a part of that tract to the testator's daughter, Catharine Storm, that conveyance did not include the premises in suit, which are consequently vested in the heirs of Aaron Bussing, subject to a power of sale which may be exercised by the successor of the deceased executor. It is admitted on all hands that Aaron Bussing's land ran to the high-water mark of the Harlem River, and that the land below high-water mark was owned by the corporation of the city of New York under the grant contained in the Dongan charter of 1686. The city has quitclaimed all its interest in the land below high-water mark. Consequently the first question is whether the conveyance by Aaron Bussing's executor ran to the high-water mark or fell short of it. If his deed carried title as far as the high-water mark, the defendant, as the suc-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cessor in title of both Catharine Storm and the city, has title to the premises in question, whatever their situation may have been with regard to the line of high water.

At the time of the conveyance to Catharine Storm, in 1784, the northerly bank of the Harlem River at the point in question was still bordered by marsh or meadow lands of considerable extent, and between the southerly boundary of the land conveyed to Catharine Storm and the Harlem River there lay a strip of this marsh or meadow land. The deed from Aaron Bussing's executor to Catharine Storm describes the easterly and southerly boundaries of the tract conveyed as follows:

"Beginning at the south side of the road that leads to Harlem; running thence south three degrees east, six chains thirty-seven links; thence south eighty-two degrees west, one chain ninety-two links; south ten degrees east, forty-one chains forty links, to the marsh; thence south seventy-nine degrees west, two chains twenty links, along said marsh; thence south fifty-four degrees west, two chains eighty links, along the aforesaid marsh; thence south eighty-six degrees west, two chains twenty links. * * * "

In December, 1795, Catharine Storm had the land, which had been conveyed to her by the deed last mentioned, surveyed, and on December 10, 1795, she conveyed the same to James Roosevelt by a description in which the distances and courses were given as they were shown by that survey, a copy of which was annexed to her deed. Although the distances and courses in her deed differ in some particulars from those mentioned in the deed of 1784, a comparison of the descriptions in the two deeds and the boundaries mentioned in both shows that she conveyed the same tract that she had taken under the deed from Aaron Bussing's executor. In her deed to Roosevelt, Catharine Storm describes the lands conveyed as bounded "southerly by high-water mark or the marsh or meadow belonging to the corporation of the said city [of New York]," and she further describes the easterly and southerly boundaries as running "to high-water mark or the meadow or marsh aforesaid; thence along the same. * * * " It thus appears that in this ancient deed the northerly line of the marsh or meadow is used synonymously with the high-water mark of the Harlem River as a description of one of the boundaries of the tract thereby conveyed, and as the dividing line between the lands of the grantor and of the city of New York.

It would require very strong evidence to cast doubt upon this declaration, made by the daughter of Aaron Bussing more than a century ago, and I do not feel that there is anything in this record sufficient to do so. Certain maps of a comparatively modern date show a "high-water mark" and an "extreme high-water mark"; the latter line being the northerly line of the marsh, and being also described on the maps as the "edge of meadow." It may very well be that what was commonly known in earlier times as the high-water mark of the river later came to be known as its extreme high-water mark, and that possible changes in the contour of the river and its banks established a lower line as the ordinary high-water mark. However this may be, the later maps show that even in comparatively recent times the edge of the marsh or meadow was still recognized as being or having been a high-water mark of the river; and this, taken with the description in

the deed of Catharine Storm, seems to me to render it reasonably free from doubt that, when Aaron Bussing's executor conveyed to her as far as the line of the marsh, he conveyed to high-water mark of the river as it had been and was known at that time. This ancient declaration by the grantor concerning the boundaries of her own lands was made at a time when the marsh or meadow lands and an actual high-water mark of the river were not merely traditions, but actual realities and well-known landmarks, and I do not think that speculations concerning the actual location of the high-water mark, evolved more than a century later from general reference in the ancient charter to marshes, meadows, and pastures lying along the Harlem River, can be permitted to cast doubt upon it.

I am of the opinion that the defendant's title is reasonably free from doubt, and that the complaint should be dismissed, with costs to the defendant.