174 P.2d 940
### WARM RIVER LUMBER CO., Inc. v. RIGHTENOUR.

#### No. 7322.

Supreme Court of Idaho.

Nov. 7, 1946.

Ralph L. Albaugh and Errol H. Hillman, both of Idaho Falls, for appellant.

C. W. Poole, of Rexburg, for respondent.

**HOLDEN, Justice.**

Appellant was a mill operator for about thirty-five years, and owned certain mill machinery and equipment for the manufacture of lumber and other forest products, located at West Yellowstone, Montana, worth approximately $7,000 and having a rental value of $3,000 per annum.

Randall C. Howe was manager, secretary-treasurer, and principal owner of the Howe Lumber Company engaged in the lumber business at Ashton, Idaho, and personally owned a millsite at the junction of Warm River and Snake River in Fremont county, Idaho.

Sometime in the first part of July, 1943, Howe and appellant discussed the matter of the organization of a corporation for leasing the mill and manufacturing lumber at such millsite. As result of the conversations, the Warm River Lumber Company (hereinafter referred to as the Company) was incorporated by Randall C. Howe. His wife, Jessie B. Howe, was made president and Howe secretary-treasurer and manager. Mr. Howe was also the principal owner of the company so organized. As a matter of fact, he was both the Warm River Lumber Company and the Howe Lumber Company.

Following the organization of the Warm River Lumber Company and the making of what is called "Agreement of Lease and Employment", July 15, 1943, between the last named company and appellant, the mill machinery and equipment was moved from West Yellowstone to Howe's millsite in Idaho. By the terms of the said "Agreement of Lease and Employment", appellant leased the mill, machinery and equipment to the Company for a period of ten years, reserving title thereto in himself. The lease contains many conditions not deemed pertinent on this appeal. The following

are the conditions deemed pertinent and were, by the parties themselves, made *express* conditions of the lease:

That the Company would employ appellant as superintendent of operations, subject to the general control and direction of the officers of the Company; that the Company would pay appellant a salary "equal to that paid by other like industries, in the vicinity or territory, for the class of work he may be doing from time to time" ; (later fixed by mutual agreement at $1.25 an hour for forty hours a week, and time and a half for hours in excess of forty, it being further agreed appellant was to draw $150 a month, $75 every pay day, the first and 15th of each month) ; that the Company would pay appellant a minimum rental of $10 per year for the use of the mill, and in addition thereto fifty per cent of the profits (there were no profits) ; that the Company would market the lumber and other products and "use its best endeavors to obtain the best market prices" for lumber and other products of the mill; that the Company would protect and keep the leased property "in repair and make and provide all parts and replacements made necessary by wear and breakages, and the title and ownership of all such repair and replaced parts shall pass to and remain in the lessor [appellant] upon their being installed as a part, or parts of the mill or other equipment"; that, at the end of the term of the lease, the Company would "return and deliver up to the lessor all the machinery, equipment and other property covered and affected by this lease and all such that may hereafter be supplied and furnished by the lessor in as good condition as the same now is or may be put into during the term of the lease, reasonable use and damage by the elements excepted".

Appellant supervised the installation of the mill machinery. Following that, in October, 1943, the mill was put in operation. By the end of the year 1943, appellant had earned wages amounting to $500.89, which were, however, by written agreement (apparently prepared by Mr. Howe), indefinitely deferred, and then never paid.

Sometime in December, 1944, being in poor health, appellant went to California. He returned in March, 1945, and resumed superintendency of mill operations. Later, the Company, being in default in the payment of wages due him, notwithstanding repeated demands therefor, in the exercise of his rights (as later found by the trial court), appellant on the 3rd day of July, 1945, "refused to run the mill" any longer and later took possession and removed certain of the machinery and equipment described in the lease.

July 10, 1945, plaintiff and respondent, Warm River Lumber Company, commenced this action in claim and delivery against appellant, J. H. Rightenour, to recover such personal property or the value thereof, in case delivery and possession could not be had. On the same day an "Affidavit

190

of Claim" was made and "Undertaking in Claim and Delivery" filed, and notice given and demand made upon the sheriff to take possession of the personal property described in the affidavit. July 17, 1945, the sheriff made and filed his "Return on Affidavit of Claim", listing the property seized and taken possession of pursuant to demand.

November 1, 1945, appellant Rightenour filed an answer to the complaint in replevin and a cross-complaint against the Company, and, December 10, 1945, the Company filed its answer to such cross-complaint. Trial was had commencing January 31, 1946, before the court sitting without a jury. April 26, 1946, findings of fact and conclusions of law were made and filed. April 30, 1946, judgment was entered thereon in favor of the Company and against appellant, from which he appeals.

Appellant contends the contract is not severable and that the stipulation therein for his employment is "an essential and material term, and interdependent with, and inseparable from, his promise to lease the property."

This court held in Spokane Cattle Loan Co. v. Crane Creek Sheep Co., 39 Idaho 801, 806, 230 P. 772, that "In determining whether or not a contract is severable, the contract itself and the circumstances surrounding the making of it should be considered."

Tersely stated, it appears from the contract itself in the case at bar and the circumstances surrounding the making of the same, that appellant was a lumber mill operator with thirty-five years experience; that he owned a mill, tractor, trucks, road grader, and other equipment suitable for the manufacture of lumber, located in the town of West Yellowstone, Montana; that the Howe Lumber Company (owned and managed by, Howe) was engaged in the lumbering business at Ashton, Idaho; that Howe owned a millsite at the junction of Warm and Snake Rivers near Ashton; that Howe had the funds to transport the Rightenour mill and equipment from West Yellowstone to the millsite, and to install the machinery and defray the expense of operating the mill and marketing the lumber.

It thus appears appellant owned the mill and had the experience required to operate it, and that Howe had the funds to finance the operation. In other words, on the one hand stood Rightenour with the mill and experience, and on the other, Howe, with the millsite and funds, a perfect interlocking, interdependent, as well as most desirable, combination, in the circumstances. Rightenour with his experience and mill was essential to Howe, and Howe, with his money and millsite, was essential to Rightenour.

Furthermore, the trial court found that "plaintiff was bound to employ the defendant as superintendent of operations of the mill"; that defendant (appellant) "was entitled to demand and insist upon his salary

being paid promptly according to agreement, and if the plaintiff failed [as it did] and neglected to comply with his demands in these respects, he was at liberty to terminate his employment with the plaintiff"; and the trial court also found that "On July 3, 1945, the defendant was within his rights in refusing to run the mill".

Moreover, in the case at bar, the parties did not apportion the consideration on the one side to the different covenants on the other.

This court in Durant v. Snyder, 65 Idaho 678, 694, 151 P.2d 776, 783, approved the following holding in Thompson v. Fesler, 74 Ind.App. 80, 123 N.E. 188, 191:

"The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned, so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the covenants and agreements, the contract is entire."

As above pointed out, it appears from the circumstances surrounding the making of the contract in question, that appellant owned the mill and had the experience and that Howe had the money to operate it, constituting a perfect interlocking, interdependent combination; hence an entire, and not a severable contract.

We turn now to appellant's contention that, in an action of claim and delivery (replevin), the right to the immediate and exclusive possession of the property must exist at the time the action is commenced.

This action was commenced July 10, 1945. It appears, prior to that time, and the trial court found, that on or about the 30th day of June, or the first of July (1945), the plaintiff (respondent) was owing the defendant (appellant) some wages for services rendered during the month of June (1945); the record shows the amount due and owing to defendant was $143.56; that appellant made demand for payment; the court found appellant "was entitled to demand and insist upon his salary being paid promptly according to agreement"; the said amount was not paid until July 20, 1945; the trial court also found "On July 3, 1945, the defendant was within his rights in refusing to run the mill".

In Bingham County Agricultural Ass'n v. Rogers, 7 Idaho 63, 65, 59 P. 931 (also an action in claim and delivery), this court pointed out:

"The purpose and intention of the Code, as we understand it, was to simplify the theretofore complicated and abstruse system of pleadings under the common law; but we do not understand it was intended to obliterate, root and branch, the whole science of pleadings from the practice of law. At common law the action of replev-

in was an action to recover the possession of specific personal property, and the proceedings were somewhat complicated. By the Code it is sought to do away with these complications, in so far as they are not essential to the accomplishment of the end sought. But the elements of the action are the same, and the necessity of stating in the complaint, in clear and concise language, the facts upon which the plaintiff predicates his right to recover, are as imperative under the Code as under the old system. In the complaint in this action the plaintiff does not state that, *at the time of commencing his action* [emphasis added], he was the owner, was in possession, or was entitled to the possession, of the personal property in question. He says that on the 6th day of May, 1896, more than two years before the commencement of this suit, he was the owner of said property. We do not think this a sufficient averment."

If it is necessary to allege that *at the time* an action in claim and delivery is *commenced,* plaintiff is entitled to possession of the property (or the owner or in possession), as above held, it would, of course, be equally necessary to *prove* the allegation. In other words, and in effect, then, this court held in an action in claim and delivery that the right to possession must exist *at the time the action is commenced.*

In the recent and well-considered case of Teater v. Good Hope Development Corporation, another action in claim and delivery (Supreme Court of California in bank, 14 Cal.2d 196, 93 P.2d 112, 119), the court, adopting the opinion of the Fourth District Court of Appeals, 86 P.2d 673, held:

"Appellants' action in this case was one of replevin and, of course, the *essential prerequisite* to such an action is the right to the *immediate* and *exclusive possession* of the property *at the time of the commencement of the action* (Fredericks v. Tracy, 98 Cal. 658, 33 P. 750) and hence, *if there by any preliminary act or condition precedent to be performed before the unqualified right of possession attaches* [emphasis added] the action cannot be maintained, and an after-acquired interest will not support replevin." (Citing cases)

It follows the judgment must be reversed and the cause remanded, and it is so ordered, with directions to dismiss the respondent's action and make and enter findings of fact and conclusions of law and a judgment for the appellant, J. H. Rightenour, and against the respondent, Warm River Lumber Company, for the return of the property that was in the possession of the respondent at the time the appellant's cross complaint was filed, or the value thereof in case a return cannot be had, and for such damages for the taking and the withholding of the property as the District Court may deem adequate and proper upon a re-examination of the evidence appearing in the reporter's transcript herein. Costs awarded to appellant.

BUDGE, GIVENS, and MILLER, JJ., and PORTER, D. J., concur.