PENNSYLVANIA RAILROAD COM-
PANY, a Corporation, Plaintiff,

v.

M. D. GREENE and J. R. Atkins, doing
business as Greene and Atkins, a
partnership, Defendants.

Civ. A. No. 1573.

United States District Court
S. D. Alabama, S. D.

May 29, 1959.

ferred to in the banana business as a "banana messenger". Defendants have filed a counterclaim for in transit damage due to chilling of the bananas.

## I.

■■ It is the defendants' contention that this action cannot be maintained by Pennsylvania Railroad, the terminal carrier, because there is an absence of privity of contract, in that the original agreement was entered into between the defendants and the initial carrier, Louisville and Nashville Railroad.

Actions to recover charges for shipments over several lines have been held properly brought both by the initial, and the terminal or delivering carrier; and usually, any carrier who could properly have collected the charges is a proper party plaintiff to bring an action for recovery * * *[1]

The rule applicable here is well stated in New York Central & H. R. R. Co. v. Weil, 119 N.Y.S.[2] at page 678: "The plaintiff as the last carrier of the freight was entitled to collect the lawful charges of its preceding carriers. This is a right long sanctioned by law and custom, and is founded on public convenience and common sense."[3]

## II.

■■■ Defendants' defense to the claim for freight charges centers around the fact that defendants, as consignors, properly invoked the provisions of Section Seven of the Bill of Lading, wherein freight charges were to be collected from consignee before delivery of the cargo.

Greene and Atkins were both consignor and consignee on the original bill of lading. There was no further written reconsignment of the shipment. From the affidavits, it appears that the reconsignment was by oral means.

W. B. Hand (of Hand, Arendall, Bedsole, Greaves & Johnston), Mobile, Ala., for plaintiff.

William E. Johnston (of Johnston, McCall & Johnston), Mobile, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, District Judge.

This action was instituted by plaintiff railroad company for freight charges which plaintiff alleges defendants incurred in shipping three carloads of bananas from Mobile, Alabama, to Indianapolis, Indiana, in December 1953. Defendant shippers are in the wholesale banana business. In the course of their business, they ship bananas to various sections of the United States. While in shipment, the three cars here involved were accompanied by a caretaker, re-

---

1. 13 C.J.S. Carriers § 318, p. 759.

2. 65 Misc. 179, 119 N.Y.S. 676.

3. See also Pennsylvania R. Co. v. Adams Mercantile Co., 245 Ala. 268, 16 So.2d 796, and New York Cent. R. Co. v. Mutual Orange Distributors, 9 Cir., 251 F. 230.

"A bill of lading is a receipt, and also a contract, binding as other contracts upon the parties thereto."[4] The rights and liabilities of the parties are governed by the acts of Congress, the bill of lading, and the tariffs duly filed with the Interstate Commerce Commission. The bill of lading and the tariff have the force of a statute. They cannot be varied under any pretext. The carrier cannot lawfully depart from them.[5]

The ultimate liability for the freight charges centers around the provisions of Section Seven of the Bill of Lading. From a reading of this section, it seems evident that it is designed to protect the shipper, if ultimate delivery is made without collecting the freight charges. In this case the bill of lading was signed by the consignors, who were the shippers, and as such are relieved of liability. However, the shippers were also the consignees; and the question is, whether or not defendant shippers, as consignees, having reconsigned the shipments orally, are liable for the freight charges.

Since the rights and liabilities of the parties are covered by the provisions of the bill of lading, the court is of the opinion that the following portion of Section Seven is controlling: "If a shipper or consignor of a shipment of property (other than a prepaid shipment) is also the consignee named in the bill of lading, and, prior to the time of delivery, *notifies, in writing,* a delivering carrier by railroad (a) to deliver such property at destination to another party, (b) that such party is the beneficial owner of such property, and (c) that delivery is to be made to such party only upon payment of all transportation charges in respect of the transportation of such property, and delivery is made by the carrier to such party without such pay-

ment, such shipper or consignor, shall not be liable (as shipper, consignor, consignee, or otherwise) for such transportation charges but the party to whom delivery is so made shall in any event be liable for transportation charges billed against the property at the time of such delivery, * * *" (Emphasis supplied.)

Since re-consignment here was not in writing, as provided for by Section Seven, the provisions of this section were never invoked so as to make the ultimate reconsignee liable for freight charges.

### III.

■ Plaintiff railroad contends that defendants' counterclaim for the in-transit damage due to chilling of the bananas in cars WFE 68412 and WFE 72276, is barred, since no claim was filed in accordance with Section 2(b) of the "Contract Terms and Conditions" portion of the bill of lading. This section in essence says that as a condition precedent to recovery, any claim must be filed in writing with the carrier issuing the bill of lading, within nine months after delivery of the property.

To allow defendants to recover under the circumstances of this record "would be to alter the terms of a contract, made in pursuance of the Interstate Commerce Act and having, in effect, the quality of a statute of limitation."[6]

### IV.

■ As to the counterclaim for damage to the bananas in car FGE 38680, caused by chilling, proof of the fact that the bananas were in good condition upon receipt by the carrier does not establish liability, as in the ordinary case, since in this case the freight was under the supervision of a caretaker.[7]

4. Pennsylvania R. Co. v. Adams Mercantile Co., 245 Ala. 268, 16 So.2d 796, 797.

5. New York Central and Hudson River Railroad Co. v. York & Whitney Co., 230 Mass. 206, 119 N.E. 855.

6. Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 458, 75 L.Ed. 983; Delphi Frosted Foods Corp. v. Illinois Cent. R. Co., 6 Cir., 1951, 188 F.2d 343.

7. Vincent, Albin & Strahl v. Hines, 1924, 198 Iowa 1224, 200 N.W. 1.

Car FGE 38680 was loaded and released by the shippers, Greene & Atkins, on December 17, 1953. There is a conflict in the evidence as to whether or not heaters were requested for installation in Mobile, Alabama. Since there were insufficient heaters in Mobile to supply the bunkers of all cars, the shippers had to choose between one of two courses of action. They could either ship the bananas at their own risk to Montgomery, Alabama, for heaters to be installed there; or, in the alternative, shippers could have retained the shipment in Mobile until such time as heaters were procured. Knowledge of the absence of sufficient heaters must be imputed to the shippers, since their representative, in the form of a banana messenger, left Mobile, Alabama, in control of the protective service the bananas were to receive.[8]

The responsibility assumed by the carrier is fixed by the agreement made and contained in the bill of lading, in accordance with the protective tariffs and regulations.[9] The heaters were furnished, not by the Louisville and Nashville Railroad, but rather by the Fruit Growers Exchange. These heaters, however were furnished in accordance with Protective Tariff Number 516.

Any protective servicing the freight should have received while in transit was either to be done, or caused to be done, by the caretaker in charge, pursuant to Protective Tariff Rule 105. In the absence of evidence showing the caretaker gave instructions for protective service which were not implemented by the railroad, there has been no showing of negligence on the part of the carrier in failing to provide proper protective service while the bananas were in transit. "The furnishing of a caretaker to look after heat protection relieved the defendant carrier from liability for damages arising from want of heat, or directly and solely from the use of heaters."[10]

It appears that this fruit was accepted in Indianapolis, Indiana, by Tony Murello upon its arrival on December 22, 1953. The amount put in controversy by the defendants' counterclaim with reference to FGE 38680 was the allowance defendants gave Tony Murello for in-transit damage due to chilling.

There was no evidence of negligence on the part of carrier after the bananas had reached their destination in Indianapolis, Indiana. The fact that the fruit was injured by in-transit chilling is substantiated by the Department of Agriculture's "Condition Inspection Certificate", which reflected the condition of the fruit upon its receipt in Indianapolis, Indiana. The Railroad Perishable Inspection Agency made frequent inspections of the fruit after it arrived in Indianapolis, and the proper parties were kept apprized of its condition and what protective measures should be taken to minimize decay.

After due deliberation, it is the opinion of this court that the evidence fails to substantiate the counterclaim set forth in defendants' pleadings.

Judgment for plaintiff with interest and costs.

8. Standard Hotel Supply Co. v. Pennsylvania R. Co., D.C., 65 F.Supp. 439.

9. Southern Ry. Co. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836.

10. S. G. Palmer Co. v. Illinois Cent. R. Co., 1925, 164 Minn. 68, 204 N.W. 566, 567.