389 P.2d 109

**Donald JOHNSON, Plaintiff-Respondent,**

**v.**

**BEKINS MOVING & STORAGE COMPANY, Defendant-Appellant.**

**No. 9292.**

Supreme Court of Idaho.

Nov. 27, 1963.

Rehearing Denied Feb. 12, 1964.

Maurice H. Greene, Boise, for appellant.

Robert C. Huntley, Jr., Pocatello, for respondent.

SMITH, Justice.

This appeal presents the issue whether appellant (defendant), a common carrier, effectively limited its liability for damage in transit to valuable hi-fidelity phonograph equipment (hereinafter sometimes referred to as a hi-fi set) delivered by respondent (plaintiff) to appellant for shipment in interstate commerce, and for its better protection appellant assessed and respondent paid an additional charge for "accessorial service," i. e., for special protective packing of the hi-fi set in a barrel.

Respondent, in his complaint, alleged that appellant contracted to transport respondent's household effects from Highland Park, New Jersey, to Pocatello, Idaho; that in particular appellant agreed specially to package respondent's hi-fi set; that as the result of appellant's failure to package and subsequent negligent handling of the set, it arrived damaged and broken. Respondent sought $555.00 damage which the parties stipulated was the value of the set. The balance of the complaint involves matters not material to this appeal.

The parties submitted the cause to the trial court on a stipulation of the facts. The court entered its findings of fact, conclusions of law, and judgment in favor of respondent and against appellant in the

sum of $555.00, from which judgment appellant perfected this appeal.

The parties stipulated that appellant is a motor common carrier engaged in transportation of household goods in interstate and foreign commerce, under the provisions of 49 U.S.C.A. §§ 301–327, commonly known as Part II of the Interstate Commerce Act of 1887 (as amended); that the transportation performed by appellant was pursuant to a certificate of convenience and necessity issued by the Interstate Commerce Commission under the Federal Motor Carrier Act and in accordance with tariffs filed with the Interstate Commerce Commission pursuant to Section 317 of such Act, and the rules and regulations of the Interstate Commerce Commission promulgated thereunder.

The stipulation refers to the order for service which respondent placed with appellant for transportation of his household goods and effects. That instrument on appellant's printed Form HI–61 8–59 is entitled, "Order for Service, Confirmation of Order, Agreement for Service and Rate Quotation"; it contains certain provisions as follow:

"The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried * * * in transit [exceptions are then listed which do not en-

compass respondent's high fidelity equipment].

* * *

"SUBJECT * * * to the further following limitations on the carrier's liability:

"(1) To 30¢ per pound of the weight of the lost or damaged article if the shipper has failed to make, in writing, any declaration of the value of the entire shipment (in which event the carrier will not be liable for breakage of china [and similar goods listed] unless packed by the carrier or unless such breakage results from negligence of carrier); or

* * *

"(3) To the amount of actual loss or damage, if shipper has declared in writing the full actual value of the entire shipment."

The foregoing, including Section (1), is also printed on the reverse side of the bill of lading, and inasmuch as respondent did not declare a value on the high fidelity equipment, appellant directs attention to the following provision which appears on the face of the bill of lading:

"NOTICE: Unless a different value for the entire shipment is declared in the paragraph below, the shipper here-

by releases and declares the value and limits the liability of the carrier to not exceeding 30 CENTS PER POUND FOR EACH ARTICLE as provided in the contract terms and conditions printed on the reverse side hereof (See especially Section 1).

"Shipper hereby declares the value of the entire shipment to be $_____ and hereby releases and limits value and liability of the carrier as provided in the contract terms and conditions printed on the reverse side hereof (See especially Section 1)."

The parties further stipulated that Household Goods Carriers' Bureau Agent, Tariff No. 78–B, MF–I.C.C. No. 90 (1959), a copy of which was submitted in evidence, was in effect at the time of shipment of respondent's goods; that Rule 3 of the tariff refers to the rates and charges based on Released Rates Order No. MC–362 of the Interstate Commerce Commission dated May 24, 1954. This order authorizes the motor carrier performing the specialized services of a Household Goods Carrier to establish and maintain commodity transportation rates and special charges for accessorial services in connection with household goods (See also Practice of Motor Common Carriers of Household Goods, 17 M.C.C. 467 (1939)). The order provides that a base transportation rate shall be applicable "when the shipper releases the value to an amount not exceeding thirty (30) cents per pound per article"; and also requires the request for services and the bill of lading have printed thereon in bold-face type:

"Unless a different value is declared, the shipper hereby releases the value to 30 cents per pound for each article."

The special packing of the hi-fi set which respondent requested and appellant agreed to perform is referred to in Household Goods Carriers' Bureau Agent, Tariff No. 78–B, § 1, Item 105, under "Additional Services". For a barrel of not less than five cubic feet capacity, a charge of $8.00 is authorized.

The bill of lading which the parties executed has printed thereon the "contract, terms and conditions"; it also contains an "itemization of packing charges and special instructions," which inter alia recite one barrel at $8.00, such charge being included in the total freight charges for the shipment set forth in the bill of lading.

The stipulation recites that at the time the bill of lading was executed respondent requested and appellant agreed to pack the hi-fi set in a barrel as stated in the bill of lading; that appellant did not pack the hi-fi set as it had agreed, and transported it as part of the household effects, without special packing of any kind; and that numer-

ous items of the household effects, including the hi-fi set, were damaged in transit.

The parties agreed that the damage to the household effects, other than the hi-fi set, would be on the basis of the released rate valuation of 30 cents per pound in accordance with the terms of the bill of lading and appellant's tariff. This left for determination the sole issue of the amount to which respondent is entitled on account of the damage in transit to his hi-fi set.

The parties agreed that the actual damage to the hi-fi set was $555.00. Appellant refused to pay this sum and admitted liability in the amount of $15.00 based on the released valuation of 30 cents per pound.

The trial court in finding for respondent in effect adopted his theory of the case. It found that appellant contracted to transport respondent's household goods under a released rate tariff of 30 cents per pound; that the parties entered into a specific covenant (denominated a contract by the trial court) for special packaging of respondent's hi-fi set and that respondent paid a consideration therefor "in addition to the basic consideration of the contract, which latter consideration also flowed to the contract [covenant] for special packaging"; that appellant transported respondent's goods, and that the same, including the hi-fi set, were damaged and broken; that appellant settled respondent's claim for damages,

exclusive of the hi-fi set, at the released rate of 30 cents per pound; and that the parties stipulated that damage to the hi-fi set was in the amount of $555.00.

The trial court concluded that the damage to the hi-fi set was proximately caused by appellant's negligence, and that appellant had breached its contract for the special packaging of respondent's set. It then stated in Conclusion of Law No. IV:

"That the contract [covenant] for special packaging of the hi-fi set and plaintiff's [respondent's] covenant to release his shipment at the released rate order were mutually dependent covenants, and the breach of the contract [covenant] for special handling was the direct and proximate cause of plaintiff's damages."

It further held in Conclusion of Law No. V, that the contract [covenant] for special packaging was not violative of either the federal statutes or the Interstate Commerce Commission regulations and did not prefer one shipper over another.

This Court accepts appellant's theory that there is but one contract involved in this case. The terminology used by the trial court in its findings, to the effect that there was one contract for shipment of the goods and another for the special accessorial service, appears to have been the reason for appellant's assignments that the trial court

committed error in finding that there were two contracts. However, in Conclusion of Law No. IV, the trial court recognized the existence of but one contract between the parties, which contained appellant's covenant for the special packaging of the hi-fi set, and respondent's covenant to release the shipment at the released rate, and that they were mutually dependent covenants of the one contract.

Appellant's principal specifications of error attack Conclusion No. IV set out above, and the judgment of $555.00 in favor of respondent, representing the amount of stipulated actual damage to the hi-fi set. It contends that respondent is entitled to recover the amount of $15.00 based upon the released rate tariff of 30 cents per pound.

Appellant's position in effect is that while it admits failure to perform the contracted service under the special covenant, since it did not package the hi-fi set in a protective container (accessorial service), and admits the damage in transit, that notwithstanding its failure so to perform, it cannot be subjected to liability in excess of the released value; also, that it can fail to perform its special covenant, without liability attaching beyond 30 cents per pound, in the absence of a declaration of value by the shipper.

An examination of the contract between the parties for the service, the bill of lading, the applicable tariff, the provisions of the Interstate Commerce Act, and the regulations of the Interstate Commerce Commission indicates clearly their predication upon a carrier's performance of the contracted services; and that if, upon performance, the shipper sustains loss or damage, then, and only then, is the carrier's liability limited to the released value of 30 cents per pound, unless the shipper has declared a different value. The limitation of liability is not predicated upon the carrier's utter disregard of its covenant to perform. Our analysis of appellant's contentions, to which we hereinafter refer, lends further assurance that the conclusions we have reached are correct.

Appellant refers to Part II, sec. 217(a) of the Interstate Commerce Act, 49 U.S.C.A. § 317 (1940), which requires an interstate motor vehicle common carrier to file with the Commission and to print and keep open for public inspection tariffs showing all rates, fares and charges for transportation, and "all services in connection therewith." Appellant also refers to Commission Rule No. 4 (17 M.C.C. at 505–6) which requires that the tariffs establishing charges for accessorial services "shall separately state each service to be rendered and the charge therefor"; also, that the "rate for transportation of such goods shall not include the charge for any accessorial service," and that "no such services other than those for which separate charges have been so estab-

lished shall be rendered by any such carrier."

Appellant, in arguing that the tariff provisions fixing liability for loss or damage are binding upon both appellant and respondent, cites Part II, sec. 217(b) and (d) of the Interstate Commerce Act which forbids the carrier from (1) charging a different compensation for transportation or for any service in connection therewith, except as specified in the tariff then in effect; (2) extending to any person privileges or facilities for transportation in interstate foreign commerce except as specified in its tariffs; and (3) providing for the filing and the publication of the carrier's tariff; and contends that no contract, tort, or other conduct of the carrier and shipper can change the specified rate; citing Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922); Chicago & A. R. Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033 (1916); Atchinson, T. & S. F. Ry. Co. v. Springer, 172 F.2d 346 (7th Cir. 1949); Louisville & N. R. Co. v. Dickerson, 191 F. 705 (6th Cir. 1911); Pennsylvania Railroad Company v. Greene, 173 F.Supp. 657 (S.D.Ala.1959); Oregon-Washington R. & Nav. Co. v. C. M. Kopp Co., 12 Wash.2d 146, 120 P.2d 845, 138 A.L.R. 633 (1942); Jones v. Northwest Airlines, 22 Wash.2d 863, 157 P.2d 728 (1945).

In the case at bar appellant complied with sec. 217(b) of the Interstate Commerce Act by charging and receiving the accessorial fee for the special packaging of respondent's hi-fi set. Appellant transported the set, however, without having performed its covenant for special packaging. Since appellant did not perform its covenant for the accessorial service it agreed to provide, the rules of the cases which it cites cannot be used in support of its position.

In attempting further to uphold its position, appellant refers to certain other provisions of the Household Goods Carriers' Bureau Agent, Tariff No. 78–B, particularly to Rules 1 and 3 thereof. The referred to provisions limit the carrier's liability to 30 cents per pound of the lost or damaged article carried or held in storage in transit, where the shipper fails to declare the value of the entire shipment in writing. It is implicit in these rules that if such provisions be applied, the services contracted for must be performed. For instance, Rule 1(a) provides in effect for transportation of the property. Rule 1(b) provides that the reduced rates in the tariff are conditioned upon the use of the standard household goods bill of lading, but that the shipper may elect not to accept its terms, and, in lieu thereof, have the property transported subject to the carrier's common law liability, in which event the rate charged shall be 100% higher than the tariff rate which would apply if the shipment be transported

at the released value. Rule 3(d) specifically states that the released value shall be deemed "to relate to all services undertaken by the carrier or its agent", which by clear implication includes additional accessorial protective services when contracted for. Again, the Rules contemplate performance of all transportation services as contracted, if the carrier be allowed to limit its liability.

Here, "all services undertaken by the carrier" were not performed, since appellant breached its covenant for protective packaging and treated it as nonexistent. In such a case, the limitation on liability applicable when released rates for accessorial service are charged has no such force and effect. Appellant cannot have the benefit of the additional charge and still seek to limit its liability when there was failure even to perform.

Appellant advances a reason why the rates and charges for household goods must be based on some kind of valuation formula, i. e., "that a household goods carrier never knows the actual value of the goods being transported." Appellant points out that household goods and personal effects may include valuable dishes, paintings, silverware and other articles of high value, the existence of which is not known to the carrier; that, therefore, the Interstate Commerce Commission has permitted carriers of household goods to publish tariffs based on

released rate valuations "unless the shipper is agreeable to disclosing the actual value of the goods being transported and the carrier permitted to charge accordingly because of the increased liability it incurs."

Appellant's contentions have no application under the facts disclosed herein, simply because the kind and character of the property offered by respondent for shipment, to-wit a high fidelity phonograph set, was known to the carrier, and respondent requested that it be packaged in a special protective container. While its actual value may not have been disclosed, nevertheless it must be deemed to have been much greater than the released value of 30 cents per pound. It is axiomatic that if equipment so disclosed was not valuable or of delicate nature, there would have been no need for special protective packaging.

Appellant argues that the carrier is permitted to charge accordingly as its increased liability occurs. This is precisely what appellant did, when it received the additional charge conditioned upon its promise to perform its covenant for protective packaging.

Our review of the pertinent federal statutes, regulations, rules, and usages thereunder leads to the conclusion that the interpretations urged by appellant cannot be accepted. We are not here concerned with a limitation on liability applicable to

property damaged in transit upon which the value was not declared; but rather with appellant's failure to pack a piece of equipment in a special protective manner, which it had promised to do in consideration of the additional charge which respondent paid therefor. The provisions of the Interstate Commerce Act, Part I, § 20(11), 49 U.S.C.A. § 20(11) (1940), limiting liability are not applicable in such a situation.

Appellant cites Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), and Texas & P. R. Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011 (1906), as authority for the proposition that a carrier's published tariff is for all purposes the legal rate, and that the rights of the parties as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier or a third party. The first cited case involved a rate charged in lesser amount, and the second case, a rate charged in greater amount than the published tariff by the carrier for the transportation of property. No covenant providing for special protection, nor disregard of any such covenant, was involved in either case; nor was any theory involved of the carrier's negligence, where it had accepted property for transportation knowing the kind and character of the property involved and the necessity for its special packaging for transit.

Appellant cites Pennsylvania Railroad Company v. Greene, 173 F.Supp. 657 (S.D. Ala.1959), to the effect that a bill of lading and the tariff have the force of a statute and cannot be varied under any pretext. A railroad carrier commenced that action to recover its freight charges from a shipper of three carloads of bananas, the shipments having been accompanied by defendants' caretaker. Defendants counterclaimed, alleging that the bananas had been damaged by chilling in transit. The court pointed out that the responsibility for protection of the bananas in transit was assumed by defendants through their caretaker in charge, pursuant to the provisions of a certain protective tariff; and that the furnishing of the caretaker relieved the carrier from liability for damage to the bananas in transit. Implicit in the holding of this case is the theory that, in the absence of any covenant for protective service, the carrier must still furnish such service as may be reasonably required to protect the shipment where the carrier has knowledge of the kind of goods being shipped.

In Watson Bros. Transp. Co. v. Feinberg Kosher Sausage Co., 193 F.2d 283 (8th Cir. 1951), hereinafter sometimes referred to as the Watson case, appellee Feinberg was awarded damages against appellant Watson Bros., a motor vehicle common carrier which afforded refrigeration service on its

trucks. The carrier had previously transported several loads of the shipper's meat products and delivered them at destination in good condition. The shipper then delivered other meat in good condition to the carrier, which was spoiled upon arrival at an interstate destination due to the fact that the carrier did not refrigerate the meat during a portion of the trip en route. The carrier disclaimed any liability by virtue of a tariff provision which read: "Rates or ratings provided on freight requiring protection from heat or cold do not obligate the carrier to provide refrigeration, heater service or vehicle specially equipped for such protection, except as otherwise provided in carrier's tariffs"; also, because it, the carrier, "did not have a duty to refrigerate these shipments in the absence of a specific request by plaintiff (shipper) on the bill of lading"; and that it had used the degree of care required in transportation.

The judgment in the Watson case, which the appellate court affirmed, was based on the theory that the carrier did not exercise reasonable care in protecting the shipment, and that the absence of a request for refrigeration on the bill of lading did not limit the carrier's common law responsibility to exercise due care. The appellate court pointed to the clause of the tariff which provided that the rate charged included the cost of protecting the shipment from damage by heat or cold, "providing that the shipper states specifically on the bill of lading that such protection is required."

The carrier contended that the requirement, that the shipper note on the bill of lading any necessity for refrigeration, was reasonable, in order that the carrier be able to select from the shipments tendered to it those which actually needed refrigeration. The court pointed out, however, that "that argument goes to the question of the reasonableness of such a requirement and whether the carrier in a given instance exercised reasonable care in determining whether a particular shipment needed refrigeration." The court then upheld the judgment of the trial court in favor of recovery to the shipper *on the theory that the kind and character of the shipments were self-identified,* i. e., perishable, which imparted notice to the carrier of the nature of the property accepted for transportation, with the requisite imposition on the carrier of the duty to exercise due care for protection of the shipment. In that regard the court said:

"If the boxes containing the products involved in the two shipments in question had not been prominently identified as perishables and needing refrigeration, and if the bills of lading themselves had not described the nature of the products constituting the shipments,

in the absence of other facts imparting notice of the perishable nature of the shipments, appellant might have successfully argued to the trier of the facts that it did not fail to exercise ordinary care in not discovering that the shipments needed refrigeration.

\* \* \*

 \* \* \*

. "Appellant contends that the failure of the shipper to request refrigeration constituted a notice or instruction to the carrier that no such service was needed. But that argument is inconsistent with the intent of the tariff \* \* \* and is directly contradicted by the agreement between the shipper and appellant's freight solicitor that refrigeration would be furnished." 193 F.2d at 287.

The case at bar presents a more cogent set of facts consonant with recovery from the carrier (appellant) than does the Watson case, although the two are quite similar. In both cases the character of the property offered for transportation was self-explanatory,—in the case at bar special equipment which required care in handling, and in the Watson case, meat products which required refrigeration in warm weather. In the case at bar the request for special packaging to protect the property offered for transportation was written on the bill of lading; in the Watson case it was not. Nevertheless, such omission was held not to have released the carrier from its obligation to exercise reasonable care in the protection of the shipment. In the case before us the notation on the bill of lading requesting protective packaging of the hi-fi equipment, and the carrier's recognition, in the tariff and in the bill of lading, of its covenant to include such packaging, constituted written recognition of the carrier's existent obligation to exercise the requisite degree of care commensurate with the known nature of the shipment, i. e., to pack the equipment in a special container and thus protect it from harm.

In the Watson case, a limitation on the carrier's liability was not in issue, whereas it is in the instant case. However, the rule of that case, imposing full liability in the absence of strict adherence to the statutory language, is extended in Loeb v. Friedman's Express, 187 Misc. 89, 65 N.Y. S.2d 450, aff'd, 271 App.Div. 873, 66 N.Y. S.2d 634, appeal dismissed, 271 App.Div. 916, 67 N.Y.S.2d 690, aff'd, 296 N.Y. 1029, 73 N.E.2d 906, cert. denied, 331 U.S. 851, 67 S.Ct. 1743, 91 L.Ed. 1859 (1946), wherein was presented the question whether the carrier had effectively limited its liability where the shipper had not declared the value of the goods in writing, the form therefor having been left blank.

While the rationale of the New York court in the Loeb case and of the courts in American Ry. Express Co. v. Lindenburg, 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414 (1923), and Paramount Dress Co. v. Kirby & Kirby, 167 Pa.Super. 524, 76 A.2d 432 (1950), would be highly persuasive in the respect that a valid limitation on liability does take place when the shipper agrees in writing to the quoted freight charges appearing on the order for service and the bill of lading, we distinguish the case at bar from those decisions. None of them dealt with the precise and, indeed, the unique question of the effect to be given a special covenant in determining whether a carrier had effectively limited its liability for the damage in transit to the shipper's goods. This special covenant—for the protective packaging of respondent's hi-fi set— which respondent specifically requested and appellant specifically agreed to perform upon receipt of an additional charge, is the precise ground upon which we affirm the decision of the trial court.

It is implicit in the Commission's Released Rates Order No. MC–362, of May 24, 1954, to which we have hereinbefore referred, that the carrier must perform the accessorial service therein provided, if it be permitted to establish and receive the authorized charge upon which it is based; also, as evidenced by the order for service and the bill of lading, a shipment can be accepted for transportation and the charges exacted for the services contracted to be rendered, only in consideration of the carrier's promise to perform its covenant of transportation in the manner prescribed. It is also implicit in such contractual relationship that, if the carrier fails to perform its covenant and treats it as nonexistent, then it cannot limit its liability in the same manner as though it had performed, and the shipper is not bound by the terms of the covenant imposing limited liability.

As hereinbefore stated, the applicable tariffs and other regulations of the Interstate Commerce Commission do not permit appellant the benefit of both the additional charge and the limitation on liability when there is failure to perform special accessorial services for which the parties have contracted.

The judgment of the trial court is affirmed. Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

Appellant, in its petition for rehearing, points out that it remitted to respondent the special service charge of $8.00 for the protective packing of respondent's hi-fi set.

It then contends that the Court is amiss in stating:

"[the] applicable tariffs and other regulations of the Interstate Commerce Commission do not permit appellant the benefit of both the additional charge and the limitation on liability when there is failure to perform special accessorial services for which the parties have contracted."

Appellant misconstrues the import of this statement.

The mere formality of refunding the charge for the protective accessorial service, after failing to perform the service is not material, since appellant admits that if it did not refund the charge, "it would have been liable to respondent for that amount as an overcharge." When the parties first executed the contract for the transportation of respondent's household goods, which included the covenant for performance by appellant of the accessorial service, appellant became entitled to the benefit of limitation of its liability upon performance of the covenant, had there not been a showing of the "carrier's utter disregard of its covenant to perform."

■ The parties, themselves, placed no importance on the fact that appellant remitted to respondent the $8.00 charge for the accessorial service. Mention thereof appears only in the stipulated facts and in appellant's statement of the evidence. Except perhaps by inference, it was not incorporated into appellant's assignments of error; nor was it argued by either party on appeal, nor were authorities cited in support of any legal significance attributable thereto. Such contention cannot be considered when raised for the first time in a petition for rehearing. Supreme Court Rule 41; Jewett v. Williams, 84 Idaho 93, 369 P.2d 590 (1962).

Appellant further insists that the contract between the parties is indivisible and, as controlled by 49 U.S.C.A. § 20(11), cannot be "vivisected" to provide for a limitation on liability as to one covenant and full liability as to another covenant within the same contract.

■ The contract contains independent covenants for which separate considerations were charged and paid. One covenant provided for transportation of respondent's household goods; the other covenant for special protective packing of his hi-fi set. When there are several covenants for performance under one contract and money considerations are apportioned and paid for each, the covenants are severable and independent. Huggins v. Green Top Dairy Farms, 75 Idaho 436, 273 P.2d 399 (1954); Warm River Lumber Co. v. Rightenour, 67 Idaho 187, 174 P.2d 940

(1946); Durant v. Snyder, 65 Idaho 678, 151 P.2d 776 (1944). As hereinbefore mentioned, appellant failed to perform the special covenant for protective packing of the hi-fi set. Appellant thereupon cannot contend that its liability under such special covenant became limited in the same manner as though it had been performed; nor as under the covenant providing for transportation of the household goods.

It is also argued that the decision of the New York Courts in Loeb v. Friedman's Express, 187 Misc. 89, 65 N.Y.S.2d 450, aff'd, 271 App.Div. 873, 66 N.Y.S.2d 634, appeal dismissed, 271 App.Div. 916, 67 N.Y. S.2d 690, aff'd, 296 N.Y. 1029, 73 N.E.2d 906, cert. denied, 331 U.S. 851, 67 S.Ct. 1743, 91 L.Ed. 1859 (1946), is contra to that of the United States Supreme Court in American Ry. Express Co. v. Lindenburg, 260 U. S. 584, 43 S.Ct. 206, 67 L.Ed. 414 (1923) and cannot properly be used in support of the conclusions reached in the case at bar. See also the later case of Paramount Dress Co. v. Kirby & Kirby, 167 Pa.Super. 524, 76 A.2d 432 (1950), approving the Loeb decision. In view of the extensive history of the Loeb case in the courts of New York and the United States Supreme Court, we do not concur with that contention.

The petition for rehearing is denied.

KNUDSON, C. J., and McQUADE, Mc-FADDEN and TAYLOR, JJ., concur.