SORENSEN–CHRISTIAN INDUSTRIES, INCORPORATED, Appellee,

v.

RAILWAY EXPRESS AGENCY, IN-CORPORATED, Appellant.

No. 14368.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1970.

Decided Nov. 30, 1970.

limited liability provision contained in tariffs filed with the Interstate Commerce Commission.

On appeal, REA claims that it had no duty to deliver by any particular date, and is consequently not liable for any losses Sorensen sustained. REA also asserts that even if it is liable for the delay, Sorensen's damages cannot exceed the declared value of the equipment indicated on the express receipt. While we agree with the district judge that REA is liable for the delay in the shipment, we conclude that Sorensen may not recover more than $500, the limit of liability under the applicable tariff. We vacate the judgment and direct the entry of a new judgment in that amount.

Sorensen, whose factory is in Angier, North Carolina, manufactures and markets "The McCalls Rebounder," a device to increase the proficiency of boys and girls in certain basketball skills. Wishing to display this device at a basketball coaches' clinic at Kutscher's Country Club in Monticello, New York, the week of June 14, 1965, Sorensen's president made arrangements for its delivery with REA's agent at the latter's office in Dunn, North Carolina. Sorensen had previously rented space at the site of the clinic and had expended considerable sums in advertising its device. REA's agent was advised of the importance of timely arrival of the "Rebounder," and he assured Sorensen that there would be no question of its arriving on time. To this end Sorensen purchased REA's "Protective Signature Service," which provides that "[s]hipments will be handled under person-to-person signature from time of receipt at origin to delivery at destination." REA's agent informed Sorensen that this service would insure timely delivery, as well as provide that the three packages necessary to ship the "Rebounder" would not be separated en route.

Sorensen delivered the "Rebounder" to REA's office on June 7, one week before the coaches' clinic was to begin. The express receipt governing the shipment

Robert N. Simms, Jr., Raleigh, N. C., for appellant.

W. A. Johnson, Lillington, N. C., for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Railway Express Agency, Inc. (REA) appeals from a judgment against it as a result of delay in the shipment of certain equipment for Sorensen-Christian Industries, Inc. (Sorensen). The district judge, sitting non-jury, found that the delay was caused by REA's failure to perform a "Protective Signature Service" for which Sorensen had paid an additional shipping charge. He concluded that REA could not avail itself of a

bore the same date. The receipt had printed on it the following notice:

> In consideration of the rate charged for carrying said property, *which is dependent upon the value thereof and is based upon an agreed valuation of* not exceeding fifty dollars for any shipment of 100 pounds or less and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, *unless a greater value is declared at the time of shipment,* the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. *Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value.* (Emphasis added.)

This provision was predicated on Rule 13–E of Official Express Classification 36 on file with the ICC, which governs shipments by REA. Part of the receipt was filled out by Sorensen, including the insertion of the amount of $500 in the blank marked "declared value."

Upon arriving in Monticello for the clinic, Sorensen's representatives were unable to locate the "Rebounder." They informed REA's agent in North Carolina, who was able to trace the shipment only as far as Washington, D. C. Two of the packages arrived on Tuesday, June 15, but the third did not reach Monticello until Friday, June 18, the final day of the clinic. At trial REA's North Carolina agent admitted that Sorensen did not get the service it had paid for. Because the sample "Rebounder" was relatively useless for display without the contents of all three packages, much of the benefit Sorensen had sought to derive from the clinic was lost to it. There was evidence that Sorensen incurred out-of-pocket expenses of approximately $4,800 in arranging for the

display. Based upon these expenses for advertising and for travel by Sorensen's representatives to Monticello, as well as evidence of lost sales, the district judge entered a judgment of $10,000 against REA.

–II–

Section 20(11) of the Interstate Commerce Act provides that a common carrier is liable "for the full actual loss, damage, or injury * * *" to property carried by it except for "transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, *in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released,* * * *." (Emphasis added.) 49 U.S. C.A. § 20(11). Under this section, a shipper is afforded the opportunity to get greater protection, and consequently incur greater shipping expense, by declaring a higher value for his property. REA was authorized to limit its liability in accordance with this procedure by Rule 13–E of Official Express Classification 36.

It has been held that the language of § 20(11) is broad enough to provide for limited liability in the case of negligent delay as well as damage or loss. Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S. Ct. 73, 81 L.Ed. 20 (1936). Thus, the district judge's finding that the delay in the delivery of the "Rebounder" was due to REA's failure to perform the "Protective Signature Service" is not sufficient in itself to deprive REA of its limited liability. "Under the law of the United States governing interstate commerce the stipulation constituted a defense to liability beyond [the declared value], unless the plaintiff should prove some facts that took the case out of the

protection of the contract." American Railway Express Co. v. Levee, 263 U.S. 19, 21, 44 S.Ct. 11, 13, 68 L.Ed. 140 (1923).

■ It is established that a common carrier cannot rely on a limited liability provision pursuant to § 20(11) unless the shipper has had an opportunity to elect greater liability by paying a greater shipping charge. New York, N. H. & H. R. R. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953); Chandler v. Aero Mayflower Transit Co., 374 F.2d 129 (4 Cir. 1967). "[A] limitation which [the shipper] had no reasonable opportunity to discover would effectively deprive [him] of the requisite choice." New York, N. H. & H. R. R. v. Nothnagle, 346 U.S. at 135–136, 73 S.Ct. at 990 (footnote eliminated). Here, the express receipt which Sorensen's representative filled out gave notice of the complete terms of the limitation of liability provision. Sorensen was an experienced shipper, having made an identical shipment for the same purpose with REA only two years previously. More importantly, it was Sorensen's representative who typed "$500" on the express receipt in the blank marked "declared value," thereby invoking a measure of liability more than three times as great as the released value provided by the tariff.

We are not confronted here with the problem present in Chandler, supra, where, because there had been no declaration of value by the shipper on the express receipt, there was a question whether the released value provided in the tariff had been "agreed upon in writing as the released value of the property" as required by § 20(11). Here, there is no doubt that Sorensen was given the requisite choice and exercised it. Cray v. Pennsylvania Greyhound Lines, 177 Pa.Super. 275, 110 A. 2d 892 (1955).

–III–

In holding that the limited liability provision was not available to REA, the district judge, citing REA's failure to perform the "Protective Signature Service," reasoned that "[d]efendant cannot have the benefit of the extra charge [for the "Protective Signature Service"] and still seek to limit its liability where there had been a failure to perform." Johnson v. Bekins Moving & Storage Co., 86 Idaho 569, 389 P.2d 109, 7 A.L. R.3d 709 (1963), cert. den., 379 U.S. 913, 85 S.Ct. 257, 13 L.Ed.2d 184 (1964), was the only authority cited for this conclusion.

In Johnson, the carrier of household goods (a hi-fi set) was denied reliance on an otherwise valid limitation of liability provision because of its failure to perform a special packaging service for which the shipper had paid an extra charge. The carrier's omission had caused the hi-fi set to be damaged during shipment.

Even if we assume that Johnson was correctly decided, it is distinguishable from the case before us. The decision there proceeded on the basis that there was a complete failure of performance of the covenant for special packaging for which a special charge had been exacted. The court indicated that the applicable tariff there "specifically states that the released value shall be deemed 'to relate to all services undertaken by the carrier or its agent,' which by clear implication includes additional accessorial protective services when contracted for. * * * Here, 'all services undertaken by the carrier' were not performed, since appellant breached its covenant for protective packaging and treated it as nonexistent. In such a case, the limitation on liability * * * has no force and effect." (Emphasis supplied.) Johnson v. Bekins Moving & Storage Co., 389 P.2d at 113, 7 A.L.R.3d at 717.

By contrast, the breach of contract here was the failure to perform fully the "Protective Signature Service," partial performance of which had begun. This fact, coupled with the flat holding in Southeastern Express Co. v. Pastime Amusement Co., supra, that § 20(11) of

the Act is broad enough in its scope " 'to embrace *all* damages resulting from *any* failure to discharge a carrier's duty with respect to *any* part of the transportation to the agreed destination' " (emphasis added) (299 U.S. at 29, 57 S.Ct. at 74), leads us to conclude that *Johnson* is not applicable here. Had REA damaged or destroyed the "Rebounder" in transit, notwithstanding full performance of the "Protective Signature Service," we do not understand Sorensen to contest that REA's liability would be limited to $500. It would seem to follow that breach of the "Protective Signature Service" covenant which gave rise to liability should provide no greater recovery.

–IV–

We vacate the judgment appealed from and direct that it be reentered in the amount of $500. The district judge should allow interest at the legal rate from the date of entry of the original judgment. In the exercise of his discretion, the district judge may allow interest from the date of the loss. The Clerk is directed to tax the costs of this appeal against REA.

Vacated and remanded.